IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| **Kalvin Donnell Coward,** ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:19-cv-1351 (LMB/TCB) |
| ) | |
| **Harold W. Clarke,** ) | |
| Respondent. ) | |

MEMORANDUM OPINION

Petitioner Kalvin Donnell Coward ("Coward" or "petitioner"), a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the April 18, 2018 Deep Meadows Correctional Center ("DMCC") disciplinary hearing at which he was found guilty of Offense Code 122C (being under the influence of any unprescribed drug). [Dkt. No. 1 at 1, 15]. Coward alleges the conviction resulted in his good time release date being changed from July 27, 2023 to October 21, 2028. Respondent has filed a Motion to Dismiss, with a supporting brief, and Coward has been afforded the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Accordingly, this matter is now ripe for disposition. For the reasons that follow, respondent's Motion to Dismiss will be granted, and the petition will be dismissed.

**I. Procedural History**

On March 29, 2018, Officer Caprio collected a urine sample from Coward and submitted it for testing. On April 9, 2018, Caprio was notified that the sample tested positive for marijuana. As a result, Caprio served Coward with a disciplinary offense report citing him for violating Offense Code 122C (being under the influence of any unprescribed drug). (Hab. R. at 36). At the disciplinary hearing held on April 12, 2018, Coward pleaded not guilty to the

charge. The hearing officer ("HO") found Coward guilty based upon the positive test for marijuana, and imposed as punishment six months of non-contact visits, and a loss of telephone privileges for 30 days. (Id. at 37). Coward filed an administrative appeal on May 3, 2018 to the Warden, who upheld the decision. (Id. at 38-40). Coward's appeal asserted he had been denied documents, his conviction should be vacated because of violations of the Virginia Department of Corrections ("VDOC") policy, that similar errors in other inmates' cases had resulted in dismissal of the convictions, and that an amendment to the Report of Decision, which substituted the HO's name for another officer's name invalidated his conviction.

On June 18, 2018, the Warden found that the issues Coward raised had no merit. Specifically, the Warden found that the test result was not a document that Coward could request and that the test result had been posted in the record system ("VACORIS");[1] that VDOC policy was not violated because the officer was not limited to testing for three drugs, but could test for up to five drugs; that errors in other inmates' cases would not be addressed because there were no errors in Coward's case; and that HO Terry striking through the printed name of HO Grant on the Report of Decision was a "minor adjustment to the forms" that is allowed. (Id. at 40-41).

Coward filed a Level II appeal with the Regional Administrator ("RA"). The RA received the appeal on June 28, 2018. (Id. at 43-47, 48). The RA addressed the warden's use of an erroneous date, April 26, 2018, as the date of the test results and the correct date, April 9, 2018, which Caprio had cited in his notice to Coward. The RA found that the April 26, 2018 date was an obvious clerical error because the evidence showed that the results were available

---

[1] The Warden's response indicated that the test results were posted to VACORIS on April 26, 2018, which was after the date of the disciplinary hearing.

before the Level I hearing. Regarding the claim that Coward had been denied requested documents, the RA informed Coward that drug test results were not documents he could request because of their classified nature and that the chain of custody documents are not returned to the VDOC and are therefore not available. The RA also informed Coward that the number of drugs tested is irrelevant because it does not impact the accuracy of the testing and that testing for multiple drugs from a single sample is intended to mitigate VDOC's costs for drug testing. The RA listened to the tape of the hearing to resolve Coward's last claim regarding two names appearing on the Report of Decision. The tape of the hearing established that HO Terry and HO Grant were both present at the hearing, but that HO Terry had conducted the hearing. Because HO Terry was a certified HO and had actually presided over the hearing, the RA concluded that there was no error in HO Terry striking through HO Grant's name on the form and Terry signing his name as the HO. (Id. at 48-49).

The Institutional Classification Authority ("ICA") met on April 23, 2018 to review Coward's classification. Coward declined to attend. The ICA recommended raising Coward's Security Level (SL) from 2 to 3 and lowering his good conduct allowance level (GCA) from 1 to 4. The recommendations were reviewed and approved on April 24, 2018. (Id. at 50).

On January 15, 2019, Coward filed a habeas petition in the Supreme Court of Virginia challenging his disciplinary hearing conviction at DMCC, and complaining that as a result of his conviction he had lost "good time credits and [had been] transferred to a higher security institution." (Id. at 4 and 9). In his petition Coward alleged that: 1) there was a problem with the chain of custody regarding his urine sample because of the April 26, 2018 posting date referenced in the Level I response (Id. at 9-10); 2) he was denied his right to confrontation

3

because no one appeared to testify about the testing and test results (Id. at 10-11, 12-13); 3) he was not given documents he requested (Id. at 11-12); 4) the HO was not fair and impartial (Id. at 11-12); 5) the charge was retaliation against Coward for winning a lawsuit against the VDOC (Id. at 13-14); 6) his GCA was incorrectly calculated (Id. at 14-15); and 7) there were errors in rejecting his appeals of the conviction. (Id. at 15-19).

On April 2, 2019, the Supreme Court of Virginia dismissed Coward's habeas petition to the extent it involved his challenge to the April 12, 2018 disciplinary hearing and the change in his rate at which his GCA was calculated, as those issues were not cognizable in a habeas proceeding because neither "directly impacted the duration of a petitioner's confinement." (Id. at 70, citing Carroll v. Johnson, 685 S.E.2d 647, 652 (Va. 2009)). The order explained that under Carroll, the Supreme Court of Virginia had no jurisdiction to consider "disputes that only tangentially affect an inmate's confinement, such as prison classification issues concerning the rate at which a prisoner earns good conduct or sentence credits, or challenges to parole board decisions." Id.

On October 16, 2019, Coward timely filed this federal habeas petition raising the following claims that he was denied due process. First, he argues that the chain of custody was broken because he was first told that the results were posted on April 9, 2018 but the Level I response from the Warden stated that the test results were posted on April 26, 2018, after the disciplinary hearing on April 12, 2018. Coward claims the discrepancies in the dates "questions the integrity and the identity of the urine being correctly matched to [plaintiff], which breaks the Chain of Custody." [Dkt. No. 1 at 18, 18-22]. Second, he repeats his argument that he was not provided the documentary evidence he requested ("a copy of the test results") before or at the

4

disciplinary hearing, and there was no legitimate institutional safety concern justifying not providing Coward the test results. [Id. at 6, 18, 23-25]. Third, he complains that his urine was tested for more drugs than VDOC policy allowed. [Id. at 8]. His last due process argument focuses on the changes of the hearing officer's name in the signature portion of the charge Report of Decision. [Id. at 27]. He also raises one equal protection argument, focusing on how two other inmates had their discipline convictions vacated where VDOC policies were not followed. Respondent admits that Coward's claims are exhausted. [Dkt. No. 11 at 3-4].

## II. Change in Good Conduct Level

Although Coward alleges that his due process rights were violated because the change to his GCA level that resulted from his conviction extended his good time release date, Virginia inmates do not have a constitutionally protected liberty interest in any particular rate of earning good conduct time against their sentences. Mills v. Holmes, 95 F. Supp. 3d 924, 935 (E.D. Va. 2015) (holding that Virginia inmates have no protected liberty interest in GCA earning level) (citing West v. Angelone, 165 F.3d 22 (4th Cir.1998) (unpublished) ("Inmates have no protected liberty interest in remaining in or being assigned to a particular good conduct allowance level...."). "While a classification change might result in the opportunity to earn more GCA credits, it does not guarantee an earlier release because prison authorities retain absolute discretion over the classification of inmates." DeBlasio v. Johnson, 128 F. Supp. 2d 315, 329 (E.D. Va. 2000), aff'd, 13 Fed. App'x 96 (4th Cir. 2001). (citing James v. Robinson, 863 F. Supp. 275, 278 (E.D. Va. 1994), aff'd, 45 F.3d 426 (4th Cir. 1994) (unpublished). Further, the effect of a classification reduction on the ability to earn good-time credits is too speculative to constitute a deprivation of a protected liberty interest. See Luken v. Scott, 71 F.3d 192, 193-94

(5th Cir. 1995) (citing Meachum v. Fano, 427 U.S. 215, 229 n.8 (1976)).  Because Coward has no constitutional due process claim regarding his GCA earning level, to the extent he seeks relief regarding the change in his GCA earning level he does not present any grounds for federal habeas relief.[2]

### III. Due Process Claims

Even assuming Coward had a liberty interest in his GCA level, there was no due process violation.  In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court held that procedural due process at a prison disciplinary hearing is satisfied if a prisoner receives: (1) written notice of the charge or charges before the hearing; (2) a written statement of the decision by the fact-finder regarding the facts relied upon and the reasons for the disciplinary action; (3) a qualified opportunity to call witnesses and present documentary evidence; (4) an opportunity to seek the aid of a fellow inmate or prison staff on complex matters; and (5) an impartial fact finder.  Id. at 563-72.  Further, the "fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact."  Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 456 (1985)

Substantive due process is satisfied if there is "some evidence" supporting the disciplinary hearing officer's findings.  Hill, 472 U.S. at 455.  "Ascertaining whether this [due process] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant

---

[2] Coward asserts that a decrease in the level of good conduct credits he accumulates is "synonymous with losing good time credits."  [Dkt. No. 1 at 20].  That argument is meritless because "maintaining a particular GCA earning level is not a protected liberty interest in Virginia and plaintiff cannot state a claim for denial of procedural due process under the Fourteenth Amendment."  Mills, 95 F. Supp. 3d at 934.

6

question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56.

The record refutes Coward's claim that the chain of custody was "broken" because the Level I response from the Warden indicated that the test result had been posted on April 26, 2018, whereas the offense report served on Coward on April 9, 2018, stated that the result had been posted on April 9, 2018, and that "there is nothing in the record indicating that an investigation was conducted to conclude that a clerical error was made besides the Level II respondent's common sense theory." [Dkt. No. 1 at 22].

The RA's Level II response stated that the April 26, 2018 date in the Level I response was a clerical error. The Level II response indicates that the RA "independently checked the drug testing results in VACORIS and confirmed that these results are present, and the reported result is accurate." (Hab. R. at 48). The RA further explained that it was obviously impossible for Coward's hearing to have been held two weeks before the April 26, 2018 date the Warden included in the Level I response and that such a "clerical error" was apparent "through an application of common sense" and that the clerical error was not a "'serious procedural error.'" (Id.). Further, Coward admitted in the state habeas pleadings that Caprio collected the sample from him on March 29, 2018, that Caprio observed Coward's urine go into the cup, and that Caprio received the positive test results from the Division of Consolidated Laboratory Services (DCLS). (Hab. R. at 9).

In United States v. Howard-Arias, 679 F.2d 363 (4th Cir. 1982), the Fourth Circuit addressed a chain of custody issue in the context of a criminal trial and found that the trial court did not err in admitting a certificate of analysis. The defendant had objected to the

7

admissibility of the certificate of analysis because the DEA agent who transported bales of marijuana seized from a disabled boat to a DEA testing laboratory had failed to testify. The Fourth Circuit stated, "precision in developing the 'chain of custody' is not an iron-clad requirement, and the fact of a 'missing link does not prevent the admission of real evidence, so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material aspect.'" Id. at 366 (citations omitted).

Finally, the Third Circuit rejected a chain of custody challenge in the context of a disciplinary hearing relying on Hill.

> Positive urinalysis results based on samples that officials claim to be appellant's constitute some evidence of appellant's drug use. A chain of custody requirement would be nothing more or less than an "independent assessment" into the reliability of the evidence, and Hill tells us, explicitly, that such a "credibility" determination is not required. See id. at 455.

Thompson v. Owens, 889 F.2d 500, 502 (3d Cir. 1989); see Webb v. Anderson, 224 F.3d 649, 652-53 (7th Cir. 2000) (although filling in gaps in the chain of custody would enhance reliability of test results, the Constitution requires only some evidence, not evidence that logically precludes any conclusion but the one reached by the disciplinary board).

In sum, there was an investigation and it concluded that the date in the Level I response was a scrivener's error.[3] In addition, Coward's admissions render any claim of possible[4] contamination nothing but pure speculation. For these reasons, Claim 1 will be dismissed.

---

[3] Davis v. Knight, No. 1:19-cv-02985-JRS-TAB, 2020 U.S. Dist. LEXIS 61741, *5 (S.D. Ind. Apr. 7, 2020) (scrivener's errors on disciplinary case paperwork did not prejudice petitioner or violate due process); Ayuso v. Semple, No. 3:18-cv-116 (JAM), 2019 U.S. Dist. LEXIS 99743, *3 (D. Conn. June 14, 2019) (court concluded "date discrepancy is a scrivener's error" because disciplinary report could not issue before incident).

[4] In a criminal trial, merely raising the possibility of tampering is not sufficient to render

8

In his second due process claim Coward alleges that he was not given a copy of the report of the test result showing that his urine "actually test[ed] positive for marijuana. [Dkt. No. 1 at 18, 23]. Under Wolff, prison officials must have the "necessary discretion to keep the hearing within reasonable limits," which includes limiting documentary evidence. 418 U.S. at 366. The test results were indicated on the offense report served on Coward, and Caprio viewed the transmitted test results from the lab stored in VACORIS.

The RA explained in his response that "[t]he drug test results are not considered Documentary Evidence, which can be requested due to their *classified nature*...." (Hab. R. at 48) (emphasis added). The Fourth Circuit has held that prison officials do not have to provide documents to prisoner when there is "a specific safety or correctional concern." Lennear v. Wilson, 937 F.3d 257, 270 (4th Cir. 2019). The "classified nature" of the test results indicates a safety concern.[5]

In addition to the security concern noted in the Level II response, printing out the results would have been cumulative since the results were already in evidence. See Chesson v. Jaquez, 986 F.2d 363, 366 (10th Cir. 1993) (requiring plaintiff to demonstrate how excluded testimony would have affected the result of the disciplinary hearing). Further, due process does not

---

evidence inadmissible and the possibility of a break in the chain of custody goes only to the weight of the evidence. See, e.g., United States v. Brown, 136 F.3d 1176, 1182 (7th Cir. 1998) (hypothetical possibility of tampering does not render evidence inadmissible but goes instead to the weight of the evidence).

[5] The record reveals that Coward obtained information regarding his urine test from the hearing officer during the hearing because in his third claim he admits he was told that he was tested for four drugs and not three as the VDOC policy provides for in a random test. [Dkt. No. 1 at 8, 24; Id. at 15]. The provision of such information by the HO is "an alternative avenue[]" that satisfies due process. See Lennear, 937 F.3d at 272.

9

require that inmates be provided with the documentary evidence of laboratory results. See Harrison v. Dahm, 911 F.2d 37, 41 (8th Cir. 1990); Fernandez v. Espinosa, No. CV F 05 0040 ALA HC, 2008 U.S. Dist. LEXIS 12157, *2 (E.D. Cal. Feb. 7, 2008) ("[T]here is no constitutional provision that requires prison officials to supply an inmate with a copy of test results or to let him view the evidence in a prison disciplinary hearing."); see also Tedesco v. Sec'y for the Dep't of Corr., 190 Fed. Appx. 752, 758 (11th Cir. 2006) (inmate not denied due process when he was denied a copy of the polygraph test results because he had notice of the charges and had the opportunity to question the officer who interviewed him and conducted the test) (citing Wolff, 418 U.S. at 563-67).

Finally, Coward admitted in the state habeas pleadings that Caprio collected the sample from him on March 29, 2018, that Caprio observed Coward's urine go into the cup, and that Caprio received the positive test results from the Division of Consolidated Laboratory Services (DCLS). (Hab. R. at 9). In short, any error in not providing him a copy of the test results is harmless, and Coward has not shown how having the test results in document form would have aided in his defense at the disciplinary hearing. See Lennear, 937 F.3d at 277. For these reasons this claim will be dismissed.

In his third claim, Coward alleges his due process rights were violated because his urine was tested for four drugs although the VDOC policy only allowed a test for three drugs. VDOC Operating Procedure ("OP") 841.5(V)(G)(2) provides that "[a] maximum of three drugs (any combination of drugs previously listed) can be tested at one time. More than three drugs may be tested on a case-by-case basis as authorized by the Facility Unit Head or Administrative Duty Officer (ADO) when warranted for reasonable suspicion of drug use." In the Level II response

the RA explained that the limit on the number of drugs in OP 841.5 is meant "to help mitigate the VADOC's drug testing costs." (Hab. R. at 71). The RA stated that the number of substances tested does not affect the accuracy of the testing performed by DCLS and that regardless of the reason Coward was tested, the number of drugs for which Coward was tested "is irrelevant to the fact that [Coward] tested positive for THC." (Id.).

As an initial matter, Coward has no viable claim based on the allegation that the VDOC policy was violated by testing for four drugs instead of just three. See Riccio v. Cty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that the state's failure to abide by its own procedural regulations is not a federal due process issue).[6] Furthermore, as the RA explained in the Level II response, the additional test for a fourth drug is irrelevant to the fact that Coward tested positive for THC. For these reasons, this claim will be dismissed.

## IV. Equal Protection Claim

In his last due process claim Coward alleges that his due process rights were violated because two officers' names appeared in the signature section of the Report of Decision. Grant's name is printed and struck through and is replaced by Terry's signature. In the Level I response, the Warden stated that Terry was "currently assigned" as the alternate HO and that striking through Grant's name on the form was an appropriate correction. (Hab. R. at 37, 41).

---

[6] See, e.g., Pitsenbarger v. Redman, Case No. 7:18CV00050, 2019 U.S. Dist. LEXIS 8508, *5 (W.D. Va. Jan. 17, 2019) (no due process violation because officer used a hand-held testing device and its results to support a disciplinary charge because state officials' alleged violations of state policies and regulations are not sufficient to support a claim that inmates constitutional rights were violated) (citation omitted); Galeas v. Beck, Case No. 3:10-cv-517-RJC, 2014 U.S. Dist. LEXIS 33869, *4-5 (W.D. N.C. Mar. 14, 2014) (even if Court assumed that missteps occurred during drug testing procedure (no gloves and unsealed container), inmate failed to state a claim under federal law) (citation omitted).

The RA's Level II response stated that he had listened to the tape of the hearing and that both Terry and Grant were present at the disciplinary hearing, but it was clear that Terry "conducted" the hearing. (Hab. R. at 48). Coward admits both officers were at the hearing and fails to claim any prejudice from having Grant's printed name having been stricken from the form. See Brown v. Braxton, 373 F.3d 501, 508 (4th Cir. 2004) (holding inmate could not succeed on due process claim where he had "not demonstrated that he was harmed" by the alleged error in his disciplinary hearing). Because any error regarding striking through one of the two names on the report is harmless, this claim will be dismissed.[7]

In his claim of being denied equal protection Coward argues that because disciplinary proceedings against other inmates were dismissed for similar violations of the controlling operating procedure, his proceeding should have been dismissed. To establish an equal protection violation, Coward must first demonstrate that he has been "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination"; once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Here, Coward claims he was treated differently than two other inmates, T. Walton, No.

---

[7] VDOC OP 861.1 provides that corrections and edits can be made to the disciplinary report for accuracy that "do not change the meaning of the offense description." See VDOC OP 861.1(X)(A)(2)(a). If the meaning of the offense description is changed, the report is returned to the reporting officer for revision. The correction may be made by either the HO or, during the initial review, by his superior approving the report. The RA's review of the tape confirmed that striking through Grant's name and replacing it with Terry's name was proper because Terry had presided over the hearing as the HO. (Hab. R. at 48).

1247839, DMCC-2018-0086 and R. Ryan, No. 1193262, DMCC-2018-0254. Coward alleges that Walton's test was "thrown out" because an officer allowed Walton to produce the specimen by himself, which violated VDOC procedures. The VDOC policy at issue in Walton's case was OP 841.5 (IV)(F)(2)(f), which states that the staff member "shall personally observe the urine collection from a side or frontal view to reduce the possibility of substitution, dilution or adulteration of the urine." Coward alleges that Ryan's test was "thrown out" because Ryan was not frisked before the test, which violated the VDOC procedures. [Dkt. No. 1 at 10, 15-16]. The VDOC policy at issue in Ryan's case was OP 841.5(V)(D)(1), which states that "[t]o avoid the possibility of substitution, dilution, or adulteration of the specimen, all offenders shall be frisk searched immediately prior to producing a specimen." Coward argues testing his urine sample for more than three drugs and having two names on his disciplinary hearing report constituted violations of VDOC policy and that because his conviction was not dismissed his right to equal protection was violated. In the Level II response, the RA found that the Walton and Riley cases were irrelevant because the issues in those cases were "completely different" from the issues Coward raised. (Hab. R. at 48). That conclusion is sound. In both Walton's and Ryan's cases, the procedural errors went to the possible accuracy of the drug test. The VDOC procedures at issue in each case were established to ensure the integrity of the sample and the correctional officers in each case did not follow those procedures. Consequently, VDOC dismissed the charges. Coward's issues, testing for more than three drugs and striking through Grant's name, are not similar errors because they do not concern the integrity of the sample. Moreover, Coward admitted in the state habeas pleadings that Caprio collected the sample from him on March 29, 2018, that Caprio observed Coward's urine go into the cup, and that Caprio

13

received the positive test results from the Division of Consolidated Laboratory Services (DCLS). (Hab. R. at 9). For these reasons, this will be dismissed.

## V. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 10] is granted, and this petition must be dismissed with prejudice. An appropriate Order and judgment shall issue.

Entered this 11th day of June 2020.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge